# CIRCUIT COURT OF BALTIMORE CITY.

Filed November 4, 1914.

JAMES C. COBEY, ET AL.,
VS.
FAIRMONT AND BALTIMORE COAL AND COKE COMPANY, ET AL.

*J. Royall Tippett* and *George W. Lindsay* for plaintiffs.

*Charles McH. Howard* and *Cadwalader & Whitman* for defendants.

DAWKINS, J.—

This is a bill filed by certain stockholders of the Fairmont and Baltimore Coal and Coke Company against the said company, the S. M. Hamilton Coal Company and Alvin P. Adams, Howard Adams and Irving Adams, alleging that the said Adamses own a controlling interest in the two defendant companies and as such owners have entered into an illegal and fraudulent scheme and conspired together to defraud the plaintiffs and the Fairmont & Baltimore Coal and Coke Company

by selling the coal mined by the said Fairmont Company unto the Hamilton Company at a price far below the market value of the coal and by charging ten cents per ton for selling said coal, and whilst concocting said scheme drew salaries and charged office and other expenses to the Fairmont Company.

The bill further charges that while these things were taking place no notices of meetings were given and these plaintiffs were not advised of the operation of the business, and that during the period of said improper acts the Fairmont Company sustained losses aggregating thirty thousand dollars.

The bill also charges that the Fairmont Company is insolvent, but that it would not have been insolvent, save for the fraud perpetrated upon it. In response for demands for statements, it is alleged that no intelligible or correct information was given, and that even such information as was given was furnished a long time after demand was made.

The bill prays:

1. For the appointment of a receiver of the Fairmont Company.

2. For an accounting.

3. For an injunction restraining the Messrs. Adams from receiving debts due to the Fairmont Company and from paying out the company's money, etc.; and

4. For a decree requiring the Messrs. Adams and the Hamilton Coal Company to refund to the Fairmont Company the money improperly diverted.

All of the defendants answer the bill and specifically deny its material allegations.

The only theory upon which the relief sought in the bill could be granted is for fraud, mismanagement, ultra vires acts or insolvency.

To justify the appointment of a receiver, the defendant must be shown to have been insolvent and unable to pay its debts. The statement showing the condition of the company as of September 30, 1914, shows assets that can be immediately turned into cash amounting to $15,110.25, with liabilities against this of $6,971.10, with no one pressing for payment and every due obligation discharged, whether or not the lease is renewed or whether

or not the lease, improvements, dwellings and store be worth a dollar.

The testimony of Mr. Irving Adams as to this is uncontradicted. There is no danger of loss suggested, so surely there can be no doubt as to the present solvency of the company, even assuming that stockholders would have any right to a receiver for this reason.

I can not see that any further accounting can be given or required than that offered in this case. If the minority stockholders desire a further examination of the books of the company, the statute provides a full and complete method of procedure.

Fraud, mismanagement or some ultra vires act only on the part of those directing the affairs of the company would entitle the plaintiffs to the further relief sought.

As was said in 55 Maryland, 419, Booth vs. Robinson, there is "no legal presumption of illegality or unfairness in transactions between the corporations, from the mere fact that the same persons are members of the board of directors of the two companies, and participated in dealings between the companies." The burden is on the party charging the wrong to prove it. Whilst this may be true, I believe that upon any one who places himself in the doubtful position as an officer of a corporation of making one corporation serve another corporation to the injury of the other, is placed the burden of showing the fairness of his acts, especially when those acts are in any way inconsistent with the interest of the other corporation (See Gaither vs. Emerson, 103 Md. 564; Acker, Merrall & Condit Company vs. McGaw, 106 Md., 556, and DuPuy vs. Terminal Company, 82 Md. 408).

A director should not make one company in which he is a director profit by the fact that he is a director in another company, to the injury of the latter company (Cumberland Coal & Iron Co. vs. Sherman, 20 Md. 117).

Whilst these things are true, no mere internal dissension among the stockholders is sufficient to cause a court of equity to intervene.

The method of selling the coal of the Fairmont Company seems to have been the usual and proper one. The testimony is practically uncontradicted that the Fairmont Company could market its product more economically by hav-

342

ing the selling agent. The prices yielded to the Fairmont Company seems to have been about the fair market price. No attempt is made to show that ten cents a ton was an improper price except the Cole proposition. It looks as if the surmise of the stockholders other than Mr. Somerville, must have been a correct one, as no one even now vouches for the Cole offer.

If salaries are unreasonable or excessive, officers must show no improper advantage in fixing them has been taken. Francis vs. Brigham Hopkins Co., 108 Md. 233).

In this case the salaries were fixed by the by-laws twelve years ago. Notwithstanding the fixed salaries, dividends as high as 25 per cent were paid. The salaries were acquiesced in. No complaint has been shown to have been made at any time, nor has any suggestion of a needful reduction been made at any time, nor has any suggestion of a needful reduction been shown. Surely the salaries would not appear to be unreasonable. After the lapse of this long time, minority stockholders should not be heard to object to them, unless shown to be excessive, not earned, or fixed by fraud or in some wrong or improper manner.

Notices seem to have been given, some of the parties admit to have received them. There is no evidence that they could not find out all about the company's officers and business. At the meeting in January, 1914, the plaintiffs seem to be content to be represented by proxy, as they no doubt were by the elder Mr. Somerville at previous meetings. If the plaintiffs did not know about the business it must have been their own neglect.

I fail to find any fraud or conspiracy, I do not discover any mismanagement as evidenced by excessive expenses or costs. I find no concealment or act that might be termed ultra vires. Under this very management dividends amounting to more than the cost of the stock have been paid to the stockholders.

Assuming that the burden is on the defendant to show fairness and proper dealing and believing that they have met the burden with full proof and finding that the company is solvent, and believing that full accounts have been given, the bill will be dismissed.